IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Civil Action No. 4:19-cv-00157

| | |
|---|---|
| **DIJON SHARPE,** ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **VERIFIED COMPLAINT** |
| **WINTERVILLE POLICE DEPARTMENT;** ) | |
| Officer **WILLIAM BLAKE ELLIS,** ) | *[COMP]* |
| in his official capacity only; and ) | |
| Officer **MYERS PARKER HELMS IV,** both ) | |
| **individually and in his official capacity,** ) | |
|     Defendants. ) | |
| ) | |

**NOW COMES** the Plaintiff Dijon Sharpe ("Mr. Sharpe"), by and through undersigned counsel T. Greg Doucette, and complains of the above-captioned Defendants as follows:

## I. SUMMARY OF THE CASE

1. The proliferation of smartphones – mobile phones with internet connectivity and the ability to record video – has revolutionized the ability of citizens to monitor public servants in the public performance of their duties, and to hold those servants accountable for abuse.

2. The power of these devices has been amplified by "livestreaming" platforms such as Twitter's Periscope and Facebook Live, which enable smartphone owners to broadcast video in real-time to interested audiences in a fashion similar to traditional television stations.

3. This combination of real-time smartphone recording coupled with live broadcast has dramatically raised public awareness of violence committed by law enforcement. See, e.g., the police killings of Philando Castile[1] and Alton Sterling[2] in the same 48-hour period of July 2016.

4. Six of the federal Circuit Courts of Appeals – the First, Third, Fifth, Seventh, Ninth, and Eleventh Circuits – have each found that recording police during the performance of their duties is protected by the First Amendment to the Constitution of the United States, subject to only minor limitations.[3]

5. While the Fourth Circuit Court of Appeals has not yet considered whether such a right to record police exists, nor whether a hypothetical right to record would also encompass the ability to broadcast that recording in real-time via a livestreaming platform, the rare unanimity among so many of its sister circuits – now spanning two decades – is such that the right to record police is clearly established in the Fourth Circuit as well.

---

[1] *Graphic video shows aftermath of shooting by police officer in Falcon Heights*, Minneapolis Star-Trib. (Jul. 7, 2016, 3:13 PM), http://www.startribune.com/graphic-video-shows-aftermath-of-shooting-by-police-officer-in-falcon-heights/385791431/

[2] Maya Lau and Bryn Stole, *Video shows fatal confrontation between Alton Sterling, Baton Rouge police officer*, New Orleans Advocate (Jul. 5, 2016, 11:28 PM), https://www.theadvocate.com/baton_rouge/news/alton_sterling/article_7a1711be-1d0a-5f98-9274-113b819b7431.html

[3] Fields v. City of Phila., 862 F.3d 353 (3rd Cir. 2017) (clearly establishing right to record police, holding "[s]imply put, the First Amendment protects the act of photographing, filming, or otherwise recording police officers conducting their official duties in public"); Turner v. Lieutenant Driver, 848 F.3d 678 (5th Cir. 2017) (clearly establishing right to record police, holding "[w]e conclude that First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions"); Gericke v. Begin, 753 F.3d 1 (1st Cir. 2014) (expanding Glik, *infra*, to traffic stops and holding "a police order that is specifically directed at the First Amendment right to film police performing their duties in public may be constitutionally imposed only if the officer can reasonably conclude that the filming itself is interfering, or is about to interfere, with his duties"); Am. Civil Liberties Union of Ill. v. Alvarez, 679 F.3d 583 (7th Cir. 2012) (invalidating wiretap statute, holding "the First Amendment limits the extent to which Illinois may restrict audio and audiovisual recording of utterances that occur in public") ; Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011) (finding a "clearly established" right to record police, concluding "[t]he filming of government officials engaged in their duties in a public place, including police officers performing their responsibilities, fits comfortably within [First Amendment] principles"); Smith v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000) (holding "[t]he First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest"); Fordyce v. City of Seattle, 55 F.3d 436 (9th Cir. 1995) (vacating and remanding for trial where genuine issue of fact existed as to whether police "attempt[ed] to prevent or dissuade [Fordyce] from exercising his First Amendment right to film matters of public interest").

6. Mr. Sharpe is a black male who records and broadcasts his interactions with law enforcement for his own protection, yet was physically attacked by Officer Helms when Mr. Sharpe disclosed that he was livestreaming his interaction with the officer, and was then threatened with arrest by Officer Blake if Mr. Sharpe attempted to broadcast such interactions again in the future.

## II. PARTIES

7. The Plaintiff Dijon Sharpe ("Mr. Sharpe") is a citizen and resident of Pitt County, North Carolina.

8. The Defendant Winterville Police Department ("the Defendant Police Department") is a unit of the town of Winterville in Pitt County, North Carolina. Winterville is a municipal corporation established pursuant to Article VII, Section 1 of the North Carolina State Constitution.

9. Upon information and belief, the Defendant William Blake Ellis ("Officer Ellis") is a citizen and resident of Pitt County, North Carolina.

10. Upon information and belief, the Defendant Myers Parker Helms IV ("Officer Helms") is a citizen and resident of Pitt County, North Carolina.

11. Upon information and belief, on or about 9 October 2018, the Defendant Police Department employed both Officer Ellis and Officer Helms, who were each acting within the course and scope of their respective employment as law enforcement officers during the interactions described herein.

## III. JURISDICTION AND VENUE

12. This Court has personal jurisdiction over the Defendants under Fed. R. Civ. P. 4(k) and N.C. Gen. Stat. § 1-75.4.

13. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 as Plaintiff's claim arises under the Constitution and laws of the United States.

14. Venue in this Court is proper under 28 U.S.C. § 1391(b).

## IV. FACTS

15. On or about 29 November 2017, Mr. Sharpe was the passenger in a vehicle that was pulled over by law enforcement in Greenville, North Carolina (the "Greenville incident").

16. During the traffic stop, Mr. Sharpe was forced by law enforcement to exit the vehicle, whereupon he was tased, choked, and severely beaten by the responding officers. Mr. Sharpe was then charged with two counts of violating N.C. Gen. Stat. § 14-223 (misdemeanor resisting a public officer) and one count of violating N.C. Gen. Stat. § 14-34.7(C)(1) (felony assault inflicting physical injury on a law enforcement officer).

17. All charges against Mr. Sharpe relating to the Greenville incident were dismissed by the District Attorney.

18. Mr. Sharpe's experience during the Greenville incident spurred him to become a civic activist promoting greater accountability for law enforcement. Mr. Sharpe also took precautions to ensure any future interactions he had with law enforcement would be recorded for protection.

19. On or about 9 October 2018, Mr. Sharpe was again the passenger in a vehicle pulled over by law enforcement.

20. The Defendant Police Department's officers, Officer Ellis and Officer Helms, conducted the traffic stop.

21. While the driver and Mr. Sharpe waited for police to first approach the vehicle, the driver called an unidentified party on his mobile phone so the party was aware the vehicle had been pulled over by police.

22. At the same time, Mr. Sharpe turned on the video recording function of his smartphone and began livestreaming – broadcasting in real-time – via Facebook Live to his Facebook account.

23. Mr. Sharpe's original Facebook Live video can be accessed by the Court directly at https://www.facebook.com/d.r.sharpe/videos/2251012878304654/. In addition, a certified transcript of the Facebook Live video is attached hereto as Plaintiff's Exhibit A.

24. During the interaction with Officer Helms at approximately the [04:44] mark in the video, Mr. Sharpe declined to provide his name when asked. Exhibit A, pp. 8-9.

25. The officers later return to their patrol car, presumably to run the driver's license and write up the resulting citations.

26. During this period Mr. Sharpe notes his practice of recording his interactions with law enforcement, stating at the [08:52] mark "I'm recording every time we get stopped." Id., p. 14.

27. Near the [11:42] mark of the video, Officer Helms returns to the vehicle and asks Mr. Sharpe "What have we got? Facebook Live, cous[in]?" Id., p. 17.

28. Mr. Sharpe responds in the affirmative, at which point Officer Helms abruptly reaches into the vehicle and attempts to grab Mr. Sharpe's phone, and later pulls on both Mr. Sharpe's seatbelt and Mr. Sharpe's shirt in a further attempt to seize the phone. Id.

29. During this assault on Mr. Sharpe, Officer Helms claims "We ain't gonna do Facebook Live, because that's an officer safety issue." Id.

30. Separately, after Officer Ellis issued citations to the driver, he stated near the [12:40] mark of the video "Facebook Live … we're not gonna have, okay, because that lets everybody y'all follow on Facebook that we're out here … It lets everybody know where y'all are at. We're not gonna have that." Id., pp. 19-20.

31. Officer Ellis continued at [12:50]: "If you were recording, that is just fine … We record, too. So in the future, if you're on Facebook Live, your phone is gonna be taken from you[.] … And if you don't want to give up your phone, you'll go to jail." Id., p. 20.

32. Later, Officer Ellis later repeated at [13:16]: "[Y]ou can record on your phone … but Facebook Live is not gonna happen." Id., p. 21.

33. At the time of these interactions, Officer Helms was acting under color of law.

34. At the time of these interactions, Officer Ellis was acting under color of law.

35. The physical attack by Officer Helms, and threat of future arrest by Officer Ellis, deprived Mr. Sharpe of his rights protected by the First Amendment to the Constitution of the United States, including his right to record police in the public performance of their duties and to broadcast such recordings in real-time.

36. Mr. Sharpe is entitled to record any future public interactions he has with law enforcement and to broadcast such interactions via Facebook Live or another livestreaming platform, and Mr. Sharpe is protected by the First Amendment to do so without having his phone confiscated or him being jailed.

## V. FIRST CAUSE OF ACTION:
### VIOLATION OF 42 U.S.C. § 1983 – DECLARATORY JUDGMENT
*(Official Capacity Claims & Monell Claim Against Defendant Police Department)*

37. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38. Mr. Sharpe is a citizen of the United States within the meaning of 42 U.S.C. § 1983.

39. The Defendant Police Department's agents acted under color of law within the meaning of 42 U.S.C. § 1983 during the interactions described above.

40. Defendant Police Department's agents physically attacked Mr. Sharpe for exercising his "rights, privileges, or immunities secured by the Constitution and laws" within the meaning of 42 U.S.C. § 1983, and further threatened to deprive Mr. Sharpe of those same rights if Mr. Sharpe attempted to broadcast in real-time any future interactions with law enforcement.

41. Upon information and belief, based on Officer Ellis's representations to Mr. Sharpe, the Defendant Police Department has an unconstitutional policy, custom, or practice of preventing citizens from recording and livestreaming their interactions with police officers in the public performance of their duties.

42. This Court is empowered by Fed. R. Civ. P. 57 and 28 U.S.C. § 2201(a) to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

43. Mr. Sharpe seeks a declaration that (a) he has a First Amendment-protected right to record police during the public performance of their duties and (b) his right to record police also includes the right to broadcast such recordings in real-time, regardless of whether or not any other individuals view such a broadcast.

## VI. SECOND CAUSE OF ACTION: VIOLATION OF 42 U.S.C. § 1983
*(Individual Capacity Claim Against Officer Helms)*

44. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. Mr. Sharpe is a citizen of the United States within the meaning of 42 U.S.C. § 1983.

46. Officer Helms acted under color of law within the meaning of 42 U.S.C. § 1983 during the interactions described above.

47. The physical attack by Officer Helms on Mr. Sharpe in an attempt to seize Mr. Sharpe's smartphone, including grabbing Mr. Sharpe's seatbelt and shirt, deprived Mr. Sharpe of his "rights, privileges, or immunities secured by the Constitution and laws" within the meaning of 42 U.S.C. § 1983.

48. Mr. Sharpe is entitled to nominal damages for Officer Helms's violation of Mr. Sharpe's rights.

## VII.  PRAYER FOR RELIEF

**WHEREFORE**, based upon the foregoing, the Plaintiff respectfully prays that:

1. The Court find each of the Defendants liable to Mr. Sharpe for the respective causes of action outlined above;

2. Mr. Sharpe have and recover of the Defendants nominal damages in the amount of $1.00 for the infringement of his constitutional rights;

3. The Court issue a judgment declaring Plaintiff has the right, protected by the First Amendment to the Constitution of the United States, to both (a) record police officers in the public performance of their duties and (b) broadcast such recording in real-time;

4. The Court exercise its discretion to award Plaintiff reasonable attorney's fees as permitted under 42 U.S.C. § 1988(b);

5. The costs of this action be taxed against the Defendants; and,

6. The Court grant any such additional and further relief as it deems proper and just.

*\*\* SIGNATURE APPEARS ON THE FOLLOWING PAGE \*\**

Respectfully submitted this the   4th   day of           November          , 2019.

                              THE LAW OFFICES OF T. GREG DOUCETTE PLLC

                              /s/ T. Greg Doucette
                              T. Greg Doucette
                              North Carolina Bar No. 44351

                              ATTORNEYS FOR PLAINTIFF
                              311 E. Main Street
                              Durham, North Carolina  27701-3717
                              Phone: (919) 998-6993
                              Fax:    (866) 794-7517
                              Email: greg@tgdlaw.com