IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Civil Action No. 4:19-cv-157-D

| | | |
|---|---|---|
| DIJON SHARPE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WINTERVILLE POLICE | ) | **BRIEF IN SUPPORT OF** |
| DEPARTMENT; Officer WILLIAM | ) | **PARTIAL MOTION TO DISMISS** |
| BLAKE ELLIS, in his official capacity | ) | |
| only; and Officer MYERS PARKER | ) | |
| HELMS IV, both individually and in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | | |

COMES NOW Defendants, by and through its undersigned attorney, and submits this brief in support of its Partial Motion to Dismiss pursuant to Rule 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

Plaintiff contends that he became a civic activist who promotes greater accountability for law enforcement following a 2017 traffic stop by a different police department in which he contends he was tased, choked, and beaten by the responding officers. (DE 1, ¶¶ 15-18). On October 9, 2018, Plaintiff was a passenger in a vehicle that was pulled over by Officer Ellis and Officer Helms of the Winterville Police Department. *Id.* at ¶¶ 19-20. While waiting for the officers to approach, the driver called someone on his mobile phone, so that the person was aware he had been pulled over by police. *Id.* at ¶ 21. At the same time, Plaintiff began

livestreaming – broadcasting in real time – via Facebook Live to his Facebook account. *Id.* at ¶ 22. During the interaction, Plaintiff refused to provide his name when asked. *Id.* at ¶ 24. The officers returned to the car to run the driver's license and issue a citation. *Id.* at ¶ 25. Upon returning to the vehicle, Officer Helms confirmed that Plaintiff was live broadcasting over Facebook live, and reaches into the vehicle to grab Plaintiff's phone. (*Id.* at ¶ 28; Recording at 11:40). The video shows Plaintiff refusing to give up his phone and leaning into the vehicle, at which point Officer Helms briefly grabs Plaintiff's seatbelt. *Id.* At the same time, Officer Helms is explaining, "we ain't gonna do Facebook Live, because that's an officer safety issue." *Id.* at ¶¶ 28-29. Officer Ellis, who was at the driver's side, likewise stated that they could not allow Facebook Live due to concerns that it lets anyone watching know where the traffic stop is being conducted. He stated that recording was not a problem, but live-streaming was not allowed, and that Plaintiff would be arrested if he tried to livestream in the future. *Id.* at ¶ 31.

Plaintiff filed this action asserting the following claims: 1) Declaratory Judgment for violation of 42 U.S.C. § 1983 against the officers in their official capacities and the Winterville Police Department; and 2) Violation of 42 U.S.C. § 1983 against Officer Helms for the "physical attack" against Plaintiff in trying to seize his cell phone. Defendants now seek dismissal of the claims against the Winterville Police Department and the individual capacity claims against Officer Helms for the reasons set forth below.

<u>ARGUMENT</u>

I. **PLAINTIFF'S CLAIMS AGAINST THE WINTERVILLE POLICE DEPARTMENT SHOULD BE DISMISSED BECAUSE IT IS A COMPONENT PART OF THE TOWN OF WINTERVILLE AND IS NOT A SEPARATE ENTITY CAPABLE OF BEING SUED.**

"The capacity of a governmental body to be sued in the federal courts is governed by the law of the state in which the district court is held." *Avery v. Burke County*, 660 F.2d 111, 113-14 (4th Cir. 1981) (citing Fed. R. Civ. P. 17(b)). Under established North Carolina law, "in the absence of statute, the capacity to be sued exists only in persons in being." *McPherson v. First Citizens National Bank,* 240 N.C. 1, 81 S.E.2d 386 (1954). "In North Carolina there is no statute authorizing suit against a police department." *Coleman v. Cooper,* 89 N.C.App. 188, 192, 366 S.E.2d 2, 5, *disc. review denied,* 322 N.C. 834, 371 S.E.2d 275 (1988), *overruled in part on other grounds by Meyer v. Walls,* 347 N.C. 97, 489 S.E.2d 880 (1997). "A municipal police department is a component of the municipality, and, therefore, lacks the capacity to be sued." *Id.*

As such, courts have routinely found that lawsuits brought against municipal police departments are not authorized. See e.g. *Moore v. City of Asheville, NC,* 290 F.Supp.2d 664, 673 (W.D.N.C. 2003), *aff'd,* 396 F.3d 385 (4th Cir. 2005) (holding that, "under North Carolina law, the Asheville Police Department is not a 'person' and, therefore, lacks the capacity to be sued"); *Ostwalt v. Charlotte–Mecklenburg Bd. of Educ.,* 614 F.Supp.2d 603, 607 (W.D.N.C. 2008) (holding, per *Coleman,* that city police department was "entitled to dismissal as a matter of law" from negligence action); *McCray v. Chapel Hill Police Dep't,* 1:06CV984, 2008 WL 762260 (M.D.N.C. 2008) *aff'd,* 289 F. App'x 605 (4th Cir. 2008) (holding that the Chapel Hill Police Department is not a separate entity capable of being sued); *Haddock v. Jacksonville Police Dep't,* 4:09-CV-85-D, 2010 WL 4722038 (E.D.N.C. 2010) *report and recommendation adopted*, 4:09-CV-85-D, 2010 WL 4735822 (E.D.N.C. 2010) (holding that "the Jacksonville Police Department is not a distinct legal entity capable

of being sued."); *Hubbard v. Charlotte-Mecklenburg Police Dep't*, 307CV485DCK, 2010 WL 3927486 (W.D.N.C.) (holding that "the Charlotte–Mecklenburg Police Department is a department of the City of Charlotte and not an entity capable of being sued."); *Butler v. Tabor City Police Dep't*, 5:10-CT-3030-BO, 2011 WL 3157120 (E.D.N.C. 2011) (holding that the Tabor City Police Department is not a distinct legal entity capable of being sued); *Bowie v. Henderson Police Dep't*, 5:12-CV-514-FL, 2012 WL 5392116 (E.D.N.C. 2012) (holding that the Henderson Police Department is not a legal entity capable of being sued).

The Winterville Police Department is not an entity capable of being sued, thus, the Court lacks personal jurisdiction over the Department. As such, the action against the Department should be dismissed under Rule 12(b)(2).

## II.   OFFICER HELMS IS ENTITLED TO QUALIFIED IMMNUNITY AS TO THE CLAIMS AGAINST HIM IN HIS INDIVIDUAL CAPACITY.

"The doctrine of qualified immunity protects police officers and public officials from claims of constitutional violations 'for reasonable mistakes as to the legality of their actions.'" *Merchant v. Bauer,* 677 F.3d 656, 661 (4th Cir.), *cert. denied,* _ U.S. _ (2012) (*quoting Saucier v. Katz,* 533 U.S. 194, 206 (2001)). "Qualified immunity extends to protect officials 'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Williams v. Ozmint,* 716 F.3d 801, 805 (4th Cir. 2013) (*quoting Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir.) (en banc), *cert. denied,* _ U.S. _ (2011)); *accord Durham v. Horner,* 690 F.3d 183, 188 (4th Cir. 2012). The purpose of qualified immunity is to "remove most civil liability actions, except those where the official clearly broke the law . . . ." *Id.* Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Dunbar Corp. v. Lindsey*, 905 F.2d

754, 763 (4th Cir. 1990). "A police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information could have believed that his conduct was lawful." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (*quoting Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) (emphasis deleted)). Indeed, the United States Supreme Court has made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Id.* (*citing Anderson v. Creighton,* 483 U.S. 635, 640, n. 2 (1987)). Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* (*citing Hunter v. Bryant,* 502 U.S. 224, 227 (1991) *(per curiam)).*

The qualified immunity analysis involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a constitutional right," *Saucier,* 533 U.S. at 201; and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted.'" *Merchant,* 677 F.3d at 662 (citation omitted). The "two inquiries ... may be assessed in either sequence." *Id.* at 661–62; *accord Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

In the present case, Officer Helms is entitled to qualified immunity as to the claims against him in his individual capacity, because there was no clearly established law holding that Officer Helms could not take reasonable steps to prevent Plaintiff from live-broadcasting a traffic stop, and the force used by Officer Helms in an attempt to prevent this was de minimis.

**A. It was not clearly established that Plaintiff had the right to live-broadcast the traffic stop, or that Officer Helms could not take reasonable steps to prevent that broadcast.**

The doctrine of qualified immunity shields police officers from "civil liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Tarantino v. Baker*, 825 F.2d 772, 774 (4th Cir. 1987) (holding that police officers are protected from civil liability where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.) The law is clearly established such that an officer's conduct transgresses a bright line when the law has "been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998), *aff'd*, 526 U.S. 603 (1999) (*citing Wallace v. King,* 626 F.2d 1157, 1161 (4th Cir.1980); *see Cullinan v. Abramson,* 128 F.3d 301, 311 (6th Cir.1997) (explaining that "[o]rdinarily, at least, in determining whether a right is 'clearly established' this court will not look beyond Supreme Court and Sixth Circuit precedent"), *cert. denied,* 523 U.S. 1094 (1998); *Jenkins ex rel. Hall v. Talladega City Bd. of Educ.,* 115 F.3d 821, 826 n. 4 (11th Cir. 1997) (en banc) (explaining that "the law can be 'clearly established' for qualified immunity purposes only by decisions

of the U.S. Supreme Court,[the] Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose"), *cert. denied,* 522 U.S. 966 (1997)).

As Plaintiff concedes, "the Fourth Circuit Court of Appeals has not yet considered whether such a right to record police exists, nor whether a hypothetical right to record would also encompass the ability to broadcast that recording in real-time via a livestreaming platform." Compl. ¶ 5. As held by the Fourth Circuit, "[t]hat there are cases in other circuits which might give rise to some uncertainty does not help...the issue is whether the law is clearly established in ***this*** circuit." *See Wilson v. Layne,* 141 F.3d 111, 114 (4th Cir.1998) (en banc) (emphasis added). As there is no Fourth Circuit decision recognizing a constitutional right to live-broadcast a traffic stop, it cannot be clearly established in the Fourth Circuit that citizens have such a right, and it was therefore not clearly established that Officer Helms could not take reasonable steps to prevent the live-broadcasting of the traffic stop due to concerns for officer safety.

Further, it has long been held that safety of officers is a "legitimate and weighty" concern. *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977). In *Mimms,* the Court held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." 434 U.S., at 111, n. 6. The Court held that the government's "legitimate and weighty" interest in officer safety outweighs the "*de minimis*" additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle. *Id.,* at 110–111. *Maryland v. Wilson,* 519 U.S. 408 (1997) held that the *Mimms* rule applied to passengers as well as to drivers. "[T]he same weighty interest in officer safety,"

the Court observed, "is present regardless of whether the occupant of the stopped car is a driver or passenger." *Id.,* at 413.

Further, the Supreme Court has recognized that, "[t]raffic stops are 'especially fraught with danger to police officers,' so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely." *Rodriguez v. United States*, 575 U.S. 348, 356, 135 S. Ct. 1609, 1616, 191 L. Ed. 2d 492 (2015). The Supreme Court has further stressed that, "[t]he risk of harm to both the police and the occupants [of a stopped vehicle] is minimized…if the officers routinely exercise unquestioned command of the situation." *Arizona v. Johnson*, 555 U.S. 323, 330–31, 129 S. Ct. 781, 786, 172 L. Ed. 2d 694 (2009) (citing *Maryland v. Wilson,* 519 U.S. 408, 414 (1997) (quoting *Michigan v. Summers,* 452 U.S. 692, 702–703 (1981)).

In a similar case, *Doring v. Kennedy*, No. CIV.03-5604 JNE/JGL, 2005 WL 300075, at *3 (D. Minn. Feb. 7, 2005), the court considered a situation in which an officer physically seized a cell phone at a traffic stop due to concerns that the individual would use the phone to call others to the scene of the traffic stop, which the individual had done on a prior occasion. The court found that "it was not unreasonable for the Officers to believe that they had to require Doring to sit down and to seize his cell phone to maintain control over the situation," and that "Doring admits that he refused to give the Officers his cell phone after they requested that he do so and pulled away from them when they attempted to obtain the cell phone. Doring's actions constituted resistance. Resistance may justify greater force." *Id.* Other courts have likewise found the use of cell phones during traffic stops to be a factor that could create officer safety issues. See e.g., *Milledge v. State*, 422 S.C. 366, 379, 811

S.E.2d 796, 803 (2018) (holding that Milledge's attempt to make a phone call during the traffic stop was a relevant consideration in determining whether he posed a threat to officer safety); *Commonwealth v. Galarza*, 93 Mass. App. Ct. 740, 743, 109 N.E.3d 508, 512, *review denied,* 480 Mass. 1110, 113 N.E.3d 838 (2018) (holding that defendant's refusal to end his cell phone call after multiple commands by officer was a factor, among several others, that weighed in favor of an objectively reasonable concern for officer safety.)

Against this legal backdrop, a reasonable officer in Officer Helms' position could conclude that the concern for officer safety outweighs the de minimis restriction of not being permitted to live-broadcast the location and activities of the police officers during a traffic stop. Further, a reasonable officer could have believed that a brief seizure of Plaintiff's cell phone when he refused to cease broadcasting the traffic stop in real time was a reasonable measure to protect officer safety, akin to ordering occupants out of a vehicle for the duration of the traffic stop or to ordering an individual to end a phone call.

**B. The use of force by Officer Helms was de minimis, and not excessive under the circumstances.**

A claim of excessive force by a law enforcement officer implicates the constitutional rights of an individual to be free from unreasonable search and seizure under the Fourth Amendment. *Elliott v. Leavitt,* 99 F.3d 640, 643 (4th Cir. 1996). To determine whether the alleged conduct constitutes excessive force in violation of the Fourth Amendment, a court must apply a standard of objective reasonableness. *Graham v. Connor,* 490 U.S. 386, 395 (1989). However, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. at 396. Excessive force claims are analyzed under an "objective reasonableness

standard." *Id.* at 388. The question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

In the present case, Plaintiff alleges that he was "physically attacked" by Officer Helms "in an attempt to seize Mr. Sharpe's smartphone, including grabbing Mr. Sharpe's seatbelt and shirt." This interaction is captured by the recording Plaintiff made, which is referenced and relied on in Plaintiff's Complaint. (DE 1, ¶ 23).[1] A review of the footage captured by Plaintiff, and incorporated into his complaint, shows that Officer Helms used only *de minimis* force, which cannot support a claim for excessive force under the Fourth Amendment. *Byrd v. Hopson*, 265 F. Supp. 2d 594, 612 (W.D.N.C. 2003) *aff'd*, 108 F. App'x 749 (4th Cir. 2004) (holding Plaintiff's assertions that she was "jerked" and "pushed" during arrest were allegations of *de minimis* force and were not sufficient to establish a Fourth Amendment excessive force claim) (*citing Crumley v. City of St. Paul, Minn.,* 324 F.3d 1003, 1007–08 (8th Cir. 2003) (Pushing and shoving arrestee is *de minimis* force); *Vinyard v. Wilson,* 311 F.3d 1340, 1348 n. 13 (11th Cir. 2002) (Officer's grabbing of small woman's arm and jerking her out of her chair was *de minimis* ); *Nolin v. Isbell,* 207 F.3d 1253 (11th Cir. 2000) (Officer who grabbed plaintiff from behind, threw him into a van, kneed him in the back and pushed his head into the side of the van used only *de minimis* force); *Harris v. City of Virginia Beach, Va.,* 11 Fed. Appx. 212 (4th Cir. 2001) (Using handcuffs applied too tightly

---

[1] Because Plaintiff incorporates this video into his Complaint by reference and relies on it, the Court may rely on this recording without converting Defendant's Motion into one for summary judgment. *See Parker v. Kelly Servs., Inc.,* 4:13–CV–111–FL, 2014 WL 886821, at *3 (E.D.N.C., 2014) (recognizing that "a court may consider certain matters outside the pleadings when reviewing a Rule 12(b)(6) motion without converting the motion into one for summary judgment, including…matters incorporated by reference into the complaint…"

and abusive language was *de minimis* force); *Karadi v. Jenkins,* 7 Fed. Appx. 185 (4th Cir. 2001) (Officer who "grabbed" plaintiff's arm did not use excessive force.); *Williams v. Bramer,* 180 F.3d 699, *clarified on reh'g,* 186 F.3d 633 (5th Cir. 1999) (Officer who choked plaintiff during a search of his mouth used *de minimis* force); *Edwards v. Giles,* 51 F.3d 155, 157 (8th Cir. 1995) (Officer who "threw" plaintiff to the ground did not use excessive force, despite cut sustained to the plaintiff's stomach); *Ferrell v. Clackamas County Sheriff's Dep't,* 12 F.3d 1106 (table), 1993 WL 501590 (9th Cir. 1993) (Officer who pushed plaintiff into desk used *de minimis* force)); *see also, Carter v. Morris*, 164 F.3d 215, 219 (4th Cir. 1999) (claims that Plaintiff was handcuffed too tightly and that officer pushed her legs as she got into the police car was "so insubstantial" that it could not establish a claim under the Fourth Amendment); *Mozee v. Burley*, 113 F. App'x 505, 506 (4th Cir. 2004) (allegations that her handcuffs were too tight and officers applied pressure to the back of her head while handcuffing her are insubstantial as a matter of law) (unpublished opinion attached).

As shown in the video, Officer Helms informs Plaintiff that he cannot record with Facebook Live because it is an officer safety issue. When Plaintiff does not turn off the recording, Officer Helms then attempts to grab Mr. Sharpe's phone, and Mr. Sharpe quickly pulls away. At this point, Officer Helms grabbed Plaintiff's seatbelt for a brief second before letting go. The video then shows that Officer Helms quickly pulled back and had no further verbal or physical interaction with Plaintiff, and Officer Helms apparently abandoned his attempts to prevent Plaintiff from live-broadcasting. This was the extent of force used by Officer Helms, and amounts to no more than de minimis force, which cannot support an excessive force claim under § 1983.

## CONCLUSION

For the reasons set forth herein, the Court should grant the motion to dismiss this action as against the Winterville Police Department and the individual capacity claims against Officer Helms.

Respectfully submitted, this the 3rd day of February, 2020.

/s/ Dan M. Hartzog Jr.
DAN M. HARTZOG JR.
N.C. State Bar No. 35330
E-mail: dhartzogjr@cshlaw.com
CRANFILL SUMNER & HARTZOG LLP
*Attorneys for Defendants*
Post Office Box 27808
Raleigh, North Carolina 27611-7808
Telephone: 919/828-5100
Facsimile: 919/828-227

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Civil Action No. 4:19-cv-157-D

|                                           |     |                            |
|-------------------------------------------|-----|----------------------------|
| DIJON SHARPE,                             | )   |                            |
|                                           | )   |                            |
|     Plaintiff,        | )   |                            |
|                                           | )   |                            |
|     v.                | )   |                            |
|                                           | )   |                            |
| WINTERVILLE POLICE                        | )   | **CERTIFICATE OF SERVICE** |
| DEPARTMENT; Officer WILLIAM               | )   |                            |
| BLAKE ELLIS, in his official capacity     | )   |                            |
| only; and Officer MYERS PARKER            | )   |                            |
| HELMS IV, both individually and in his    | )   |                            |
| official capacity,                        | )   |                            |
|                                           | )   |                            |
|     Defendants.       | )   |                            |

I hereby certify that on February 3, 2020, I electronically filed the foregoing pleading

with the Clerk of Court using the CM/ECF system, which will send notification of such filing

to the following:

    T. Greg Doucette
    311 E. Main St.
    Durham, NC  27701-3717
    greg@tgdlaw.com
    *Attorney for Plaintiffs*

This the 3rd day of February, 2020

HARTZOG LAW GROUP, LLP

*/s/ Dan M. Hartzog Jr.*
DAN M. HARTZOG JR.
N.C. State Bar No. 35330
E-mail: dhartzogjr@hartzoglawgroup.com
Phone/Fax: (919) 480-2450
KATHERINE BARBER-JONES
N.C. State Bar No. 44197
E-mail: kbarber-jones@hartzoglawgroup.com
Phone/Fax: (919) 424-0091
1903 N. Harrison Ave., Ste. 200
Cary, NC 27513