# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION

#### Civil Action No. 4:19-cv-00157

|  |  |  |
|---|---|---|
| DIJON SHARPE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PLAINTIFF'S** |
| | ) | **MEMORANDUM IN OPPOSITION** |
| WINTERVILLE POLICE DEPARTMENT; | ) | **TO DEFENDANTS' PARTIAL** |
| Officer WILLIAM BLAKE ELLIS, | ) | **MOTION TO DISMISS** |
| in his official capacity only; and | ) | |
| Officer MYERS PARKER HELMS IV, both | ) | |
| individually and in his official capacity, | ) | |
| Defendants. | ) | |
| | ) | |

**NOW COMES** the Plaintiff Dijon Sharpe ("Mr. Sharpe"), by and through undersigned counsel T. Greg Doucette, and responds to the Defendants' Partial Motion to Dismiss as follows:

## I. RELEVANT FACTS

Mr. Sharpe was an innocent passenger in a vehicle stopped for a minor traffic violation. Ver. Compl., ECF No. 1, ¶¶ 19-20. Mr. Sharpe chose to record that interaction on his mobile phone, and to broadcast in real-time – to "livestream" it – using the Facebook Live application. Id., ¶¶ 22-23. Defendant Officer Helms ("Officer Helms"), despite having no reason to suspect Mr. Sharpe of wrongdoing nor to inquire as to Mr. Sharpe's conduct, asked Mr. Sharpe what he was doing on his phone. Id., ¶ 27. Mr. Sharpe not only answered, but did so honestly: he informed Officer Helms that their interaction was being livestreamed. Id., ¶ 28. Officer Helms then assaulted Mr. Sharpe in an effort to seize Mr. Sharpe's phone and prevent Mr. Sharpe from further broadcasting the conduct of Officer Helms and his partner Defendant Officer Ellis

("Officer Ellis").[1]  Id.  Officer Ellis then advised Mr. Sharpe that he would be jailed if he attempted to livestream police conduct in the future.  Id., ¶ 31.

Mr. Sharpe filed suit to vindicate his rights under the First Amendment to record and broadcast police in the public performance of their duties, and Defendants now seek to dismiss the claim against Winterville Police Department and the personal capacity claim against Officer Helms.

## II.  RULE 12(b)(2) MOTION TO DISMISS WINTERVILLE POLICE DEPARTMENT

Plaintiff defers to the Court's judgment regarding the motion to dismiss the Winterville Police Department as a discrete entity.

Defendants' counsel accurately recites the case law in this jurisdiction requiring a plaintiff to name as a defendant the municipality under which a police department operates. Notably, Plaintiff has already done so via his official capacity claims against Officers Helms and Ellis.  Hafer v. Melo, 502 U.S. 21, 25 (1991) ("[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting Monell v. New York City Dept. of Social Services, 436 U. S. 658, 690, n. 55 (1978)); Kentucky v. Graham, 473 U.S. 159, 165 (1985) (same); Davison v. Randall, 912 F.3d 666 (4th Cir. 2019) (same).  The inclusion of the Winterville Police Department as a separate named Defendant was a prophylactic measure by Plaintiff's counsel in the event the official capacity claims were somehow procedurally defective, providing an alternative theory of haling the Department into court as an unincorporated association.[2]

---

[1] The crime of assault in North Carolina is defined at the common law.  State v. Roberts, 155 S.E.2d 303 (N.C. 1967).  "A battery … is an assault whereby any force is applied, directly or indirectly, to the person of another." State v. Britt, 154 S.E.2d 519 (N.C. 1967) (citing State v. Sudderth, 114 S.E. 828 (N.C. 1922)).

[2] Fed R. Civ. P. 17(b)(3)(A) provides "[c]apacity to sue or be sued is determined … by the law of the state where the court is located, except that a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States

The Town of Winterville, in filing an Answer without first moving to dismiss on personal jurisdiction grounds, has waived any theoretical defects counsel's separate inclusion of the Department was intended to rectify. Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). As such, assuming the Court does not *sua sponte* find a basis to dismiss the official capacity claims on personal jurisdiction grounds, the Plaintiff does not oppose Defendants' motion as to the Winterville Police Department.

### III.  OFFICER HELMS IS NOT ENTITLED TO QUALIFIED IMMUNITY

Officer Helms moves to dismiss the individual capacity claim against him on the basis that he is entitled to qualified immunity. His conclusions are incorrect, and the motion should be denied.

#### A.  *Mr. Sharpe had a constitutional right to record and broadcast police in the public performance of their duties.*

For decades, our courts have recognized that audiovisual recordings "are a significant medium for the communication of ideas" entitled to be "safeguarded by the First Amendment." Joseph Burstyn v. Wilson, 343 U.S. 495, 501-502 (1952). This First Amendment protection encompasses "the broader right to film." Turner v. Lieutenant Driver, 848 F.3d 678, 689 (5th Cir. 2017) ("[T]he First Amendment protects the act of making film, as there is no fixed First Amendment line between the act of creating speech and the speech itself.") (quotation marks and citation omitted). As the Seventh Circuit held, the "act of *making* an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording." Am. Civil Liberties

---

Constitution or laws[.]" The history and common law governing what constitutes an unincorporated association is sufficiently broad that a police department could qualify under the Federal Rules when a plaintiff's constitutional rights are implicated. See generally G.W. Keeton, The Elementary Principles of Jurisprudence 169 (2d ed. 1949).

Union of Illinois v. Alvarez, 679 F.3d 583, 595 (7th Cir. 2012) (emphasis as in the original). The Third Circuit similarly held that "[t]he First Amendment protects actual photos, videos, and recordings … and for this protection to have meaning the Amendment must also protect the act of creating that material." Fields v. City of Philadelphia, 862 F.3d 353, 358 (3d Cir. 2017). Especially today, "[w]e live, relate, work, and decide in a world where image capture from life is routine, and captured images are part of ongoing discourse, both public and private." Seth F. Kreimer, Pervasive Image Capture and the First Amendment: Memory, Discourse, and the Right to Record, 159 U. Pa. L. Rev. 335, 337 (Jan. 2011).

The *dissemination* of such material has similarly been recognized as constitutionally protected, particularly with regard to reporters and news outlets. "The Constitution specifically selected the press, which includes not only newspapers, books, and magazines, but also humble leaflets and circulars … to play an important role in the discussion of public affairs." Mills v. Alabama, 384 U.S. 214, 219 (1966). The Supreme Court explained "that a press that is alert, aware, and free most vitally serves the basic purpose of the First Amendment. For without an informed and free press there cannot be an enlightened people." New York Times Co. v. United States, 403 U.S. 713, 728 (1971) (Stewart, J., concurring). Yet, as the First Circuit noted, "[t]he proliferation of electronic devices with video-recording capability means that many of our images of current events come from bystanders with a ready cell phone or digital camera rather than a traditional film crew, and news stories are now just as likely to be broken by a blogger at her computer as a reporter at a major newspaper." Glik v. Cunniffe, 655 F.3d 78, 84 (1st Cir. 2011).

In the case before this Court, Mr. Sharpe filled that "blogger at [his] computer" role – except that Mr. Sharpe's computer merely happened to be the size of a handheld device, capable

of accessing the internet over a cellular network. He was involved in both the making and dissemination of an audiovisual recording of public officials in the public performance of their public duties. Such conduct is protected by the First Amendment.

### B. Mr. Sharpe's constitutional rights were clearly established at the time he was assaulted by Officer Helms.

Mr. Sharpe acknowledges a defendant is entitled to qualified immunity, even when violating a constitutionally protected right, if the right was not "clearly established" at the time of the violation. Pearson v. Callahan, 555 U.S. 223, 236 (2009); Saucier v. Katz, 533 U.S. 194, 200 (2001); Melgar v. Greene, 593 F.3d 348, 353 (4th Cir. 2010). The Fourth Circuit appears to have considered the right to record police in the public performance of their duties on only one solitary occasion, issuing a ruling with no precedential value. Szymecki v. Houck, 353 Fed. Appx. 852 (4th Cir. 2009) (per curiam) (unpublished) (noting that the District Court ruled the right to record police was not clearly established, and "[w]e have thoroughly reviewed the record and the relevant legal authorities and we agree.").

Nonetheless, "[i]n the absence of 'directly on-point, binding authority,' courts may also consider whether 'the right was clearly established based on general constitutional principles or a consensus of persuasive authority.'" Ray v. Roane, No. 18-2120 (4th Cir. 2020) (quoting Booker v. S.C. Dep't of Corr., 855 F.3d 533, 543 (4th Cir. 2017)); see also Owens v. Lott, 372 F.3d 267, 279 (4th Cir. 2004) ("[T]he absence of controlling authority holding identical conduct unlawful does not guarantee qualified immunity."). In the years before and since the Fourth Circuit punted in Szymecki, six of the federal Circuit Courts of Appeals – the First, Third, Fifth, Seventh, Ninth, and Eleventh Circuits[3] – have each found that recording police during the

---

[3] Fields, supra, 862 F.3d 353 (3rd Cir. 2017); Turner, supra, 848 F.3d 678 (5th Cir. 2017); Gericke v. Begin, 753 F.3d 1 (1st Cir. 2014) (holding "a police order that is specifically directed at the First Amendment right to film police performing their duties in public may be constitutionally imposed only if the officer can reasonably conclude

performance of their duties is protected by the First Amendment to the Constitution of the United States, subject to only minor limitations.

The cascade of appellate opinion merely recognizes the changed technological landscape we live in today. When the District Court in Szymecki held that the right to record police was not clearly established, it was 2008; the iPhone was still a novelty in its first iteration, and camera-equipped smartphones were in their infancy. Today, more than a decade later, it is estimated that more than 1.5 *billion* camera-equipped smartphones are sold globally every single year.[4] The second most-visited website in the globe is video-sharing website YouTube; the sixth most-visited is Facebook, which allows the sharing of videos like those recorded by Mr. Sharpe.[5]

This confluence of precedent in sister circuits alongside a technology landscape where camera-equipped smartphones are a common personal accessory is such that the right to record police in the public performance of their duties was clearly established at the time Officer Helms assaulted Mr. Sharpe.

### C. The quantum of force used by Officer Helms is irrelevant to a First Amendment inquiry; tolerating even *de minimis* force in such a situation is tantamount to an impermissible content-based restriction on speech.

Defendants' counsel capably recites Fourth Amendment case law regarding a police officer's permissible use of force. Such precedent is irrelevant in what is, at its core, an issue of First Amendment-protected conduct. Allowing a government agent to use even *de minimis* force

---

that the filming itself is interfering, or is about to interfere, with his duties"); Alvarez, *supra*, 679 F.3d 583 (7th Cir. 2012); Glik, *supra*, 655 F.3d 78 (1st Cir. 2011); Smith v. City of Cumming, 212 F.3d 1332 (11th Cir. 2000) (holding "[t]he First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest"); Fordyce v. City of Seattle, 55 F.3d 436 (9th Cir. 1995) (vacating and remanding for trial where genuine issue of fact existed as to whether police "attempt[ed] to prevent or dissuade [Fordyce] from exercising his First Amendment right to film matters of public interest").

[4] Arne Holst, Smartphone sales worldwide 2007-2020, Aug. 2019 (https://www.statista.com/statistics/263437/global-smartphone-sales-to-end-users-since-2007/).

[5] Alexa, The top 500 sites on the web, Feb. 2020 (https://www.alexa.com/topsites).

to prevent someone from recording and broadcasting that agent in the public performance of his or her duties would be tantamount to an improper content-based restriction on speech.

Content-based restrictions on speech are presumptively unconstitutional under the First Amendment. City of Renton v. Playtime Theatres, 475 U.S. 41, 47 (1986). The government is prohibited from restricting speech based on its content because such restrictions threaten to "manipulate the public debate through coercion rather than persuasion." Turner Broad. Sys. Inc. v. FCC, 512 U.S. 622, 641 (1994). Such restrictions permit governments to "drive certain ideas or viewpoints from the marketplace." R.A.V. v. City of St. Paul, 505 U.S. 377, 387 (1982). Laws imposing content-based speech restrictions are constitutional only if they survive strict scrutiny, which requires that the law be narrowly tailored to serve a compelling state interest. Reed v. Town of Gilbert, 576 U.S. ____, ____, 135 S. Ct. 2218, 2226 (2015).

The Supreme Court in Reed defined content-based regulations as "those that target speech based on its communicative content." Id. It noted that:

> This commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

> Id. at 2227.

In Sorrell v. IMS Health, 564 U.S. 552, 566 (2011), the Supreme Court stated that if a government "bent on frustrating an impending demonstration" passed a law demanding two years' notice before the issuance of parade permits, such a law – while facially content-neutral – would nonetheless be content-based because its purpose was to suppress speech on a particular topic.

Here, Mr. Sharpe was exercising his clearly established First Amendment right to record Officer Helms and Officer Ellis in the public performance of their duties. As evident in the video itself, Mr. Sharpe did so innocuously and was not interfering in any way with the officers' conduct. Mr. Sharpe answered Officer Helms when asked what he was doing on his phone even though Mr. Sharpe had no obligation to do so; and not only did Mr. Sharpe answer, he did so honestly. Yet Officer Helms gave no verbal order to stop recording and made no verbal request of Mr. Sharpe to hand over the phone. Officer Helms chose to assault Mr. Sharpe instead.

Permitting such assaults by police when their conduct is innocuously recorded and broadcast would be tantamount to restricting speech based on its content: speech related to police performance. Such a restriction cannot survive strict scrutiny.

### D. This Court should hesitate before expanding the application of qualified immunity.

Mr. Sharpe recognizes that this Court must apply qualified immunity precedents as they currently exist, warts and all. Nonetheless, the Court should also consider the grotesqueries that have resulted from over-expansive grants of qualified immunity, and the ensuing concerns expressed by the justices and judges tasked with its application.[6]

---

[6] See, e.g., Kisela v. Hughes, 138 S. Ct. 1148, 1162 (2018) (Sotomayor, J., dissenting) (qualified immunity has become "an absolute shield for law enforcement officers" that has "gutt[ed] the deterrent effect of the Fourth Amendment"); Ziglar v. Abbasi, 137 S. Ct. 1843, 1872 (2017) (Thomas, J., concurring in part and concurring in the judgment) ("In an appropriate case, we should reconsider our qualified immunity jurisprudence."); Crawford-El v. Britton, 523 U.S. 574, 611 (1998) (Scalia, J., dissenting) ("[O]ur treatment of qualified immunity under 42 USC § 1983 has not purported to be faithful to the common-law immunities that existed when § 1983 was enacted, and that the statute presumably intended to subsume."); Wyatt v. Cole, 504 U.S. 158, 170 (1992) (Kennedy, J., concurring) ("In the context of qualified immunity … we have diverged to a substantial degree from the historical standards."); Horvath v. City of Leander, No. 18-510112020U.S. App. LEXIS 655, *26 (5th Cir. Jan. 9, 2020) ("[T]here is no textualist or originalist basis to support a 'clearly established' requirement in § 1983 cases."); Zadeh v. Robinson, 902 F.3d 483, 498 (5th Cir. 2018) (Willett, J., concurring) ("I write separately to register my disquiet over the kudzu-like creep of the modern immunity regime. Doctrinal reform is arduous, often-Sisyphean work … But immunity ought not be immune from thoughtful reappraisal."); Manzanares v. Roosevelt Cty. Adult Det. Ctr., No. CIV 16-0765, 2018 U.S. Dist. LEXIS 147840, *57 n.10 (D. N.M. Aug. 30, 2018) ("The Court disagrees with the Supreme Court's approach [to qualified immunity]. The most conservative, principled decision is to minimize the expansion of the judicially created clearly established prong, so that it does not eclipse the congressionally enacted § 1983 remedy."); Estate of Smart v. City of Wichita, No. 14-2111-JPO, 2018 U.S. Dist. LEXIS 132455, *46 n.174 (D. Kan. Aug. 7, 2018) ("[T]he court is troubled by the continued march toward fully insulating police officers from trial — and thereby denying any relief to victims of excessive force — in contradiction to the plain language of the

## IV.  CONCLUSION

Based upon the foregoing, Mr. Sharpe had clearly established constitutional rights to record and broadcast public police conduct; those rights were violated by Officer Helms when the officer attempted to grab Mr. Sharpe's mobile device.  Accordingly, the Court should deny the Defendant's Motion to Dismiss the personal capacity claim against Officer Helms.

Respectfully submitted this the ___24th___ day of _____February_____, 2020.

THE LAW OFFICES OF T. GREG DOUCETTE PLLC

/s/ T. Greg Doucette
T. Greg Doucette
North Carolina Bar No. 44351

ATTORNEYS FOR PLAINTIFF
311 E. Main Street
Durham, North Carolina  27701-3717
Phone: (919) 998-6993
Fax:    (866) 794-7517
Email: greg@tgdlaw.com

---

Fourth Amendment."); Thompson v. Clark, No. 14-CV-7349, 2018 U.S. Dist. LEXIS 105225, *26 (E.D.N.Y. June 11, 2018) ("The legal precedent for qualified immunity, or its lack, is the subject of intense scrutiny."); Wheatt v. City of E. Cleveland, No. 1:17-CV-377, 2017 U.S. Dist. LEXIS 200758, *8-9 (N.D. Ohio Dec. 6, 2017) (criticizing the Supreme Court's decision to permit interlocutory appeals for denials of qualified immunity); Lynn Adelman, *The Supreme Court's Quiet Assault on Civil Rights*, Dissent (Fall 2017) (essay by judge on the U.S. District Court for the Eastern District of Wisconsin); Jon O. Newman, Opinion, *Here's a Better Way to Punish the Police: Sue Them for Money*, Wash. Post (June 23, 2016) (article by senior judge on the Second Circuit); Stephen Reinhardt, *The Demise of Habeas Corpus and the Rise of Qualified Immunity*, 113 Mich. L. Rev.1219 (2015) (article by former judge of the Ninth Circuit).

## CERTIFICATE OF SERVICE

The undersigned has this date served the foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS** upon the Defendants as follows:

**To:**    Dan M. Hartzog, Jr., Esq.
Katherine Barber-Jones, Esq.
HARTZOG LAW GROUP, LLP
1903 N. Harrison Avenue, Suite 200
Cary, NC 27513
Email: dhartzogjr@hartzoglawgroup.com
      kbarber-jones@hartzoglawgroup.com
*Attorneys for All Defendants*
**Service by:** CM/ECF pursuant to E.D.N.C. Local R. 5.1

This the __24th__ day of _____February_____, 2020.

THE LAW OFFICES OF T. GREG DOUCETTE PLLC


/s/ T. Greg Doucette
T. Greg Doucette
North Carolina Bar No. 44351

ATTORNEYS FOR PLAINTIFF
311 E. Main Street
Durham, North Carolina 27701-3717
Phone: (919) 998-6993
Fax: (866) 794-7517
Email: greg@tgdlaw.com