IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Civil Action No. 4:19cv157

| | |
|---|---|
| DIJON SHARPE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WINTERVILLE POLICE | ) **REPLY IN SUPPORT OF** |
| DEPARTMENT, Officer WILLIAM | ) **DEFENDANTS' PARTIAL** |
| BLAKE ELLIS, in his official capacity | ) **MOTION TO DISMISS** |
| only, and Officer MYERS PARKER | ) |
| HELMS IV, both individually and in his | ) |
| official capacity, | ) |
| | ) |
| Defendants. | ) |
| | ) |

NOW COME Defendants "Winterville Police Department" and Myers Parker Helms IV ("Officer Helms"), in his individual capacity, by their undersigned attorneys and pursuant to Local Civil Rule 7.

**I.  Plaintiff's claims against Defendant "Winterville Police Department" should be dismissed.**

Defendants have moved to dismiss Defendant "Winterville Police Department" pursuant to Rules 12(b)(2) and 12(b)(6). *See* Doc. 15 at 1 ("Plaintiff's claims fails to state a claim upon which relief can be granted as to these defendants [referring to "all claims against the Winterville Police Department and all claims against Officer Myers Parker Helms, IV"]"). While Plaintiff acknowledges that Defendants "accurately recite[] case law" regarding his ability to sue "Winterville Police Department," Plaintiff argues that Defendants waived their objections based upon

personal jurisdiction by filing the Answer just before the Partial Motion to Dismiss. *See* Doc. 14 [Answer], Doc. 15 [Partial Motion to Dismiss], and Doc. 16 [Memorandum in Support of Motion to Dismiss] (all filed Feb. 4, 2020). Plaintiff characterizes "Winterville Police Department" on brief as an "unincorporated association" who was named a Defendant "as a prophylactic measure… in the event the official capacity claims were somehow procedurally defective." *See* Doc. 19 at 2.[1] Regardless of Plaintiff's characterization, "Winterville Police Department" is subject to dismissal, whether pursuant to Rule 12(b)(2) or Rule 12(b)(6).

As cited by Plaintiff, Rule 17(b) of the Federal Rules of Civil Procedure provides that the law of the state where the court is located determines whether a defendant has the capacity to be sued. *See* Fed. R. Civ. P. 17(b); Doc. 19 at 2 n.2. Under North Carolina law, only a "person in being" may be sued, absent specific statutory authority otherwise, and as there is no governing statute in North Carolina authorizing suit against a "police department," "[a] municipal police department is a component of the municipality, and, therefore, lacks the capacity to be sued." *See Wilcoxson v. City of Raleigh*, No. 5:13-CV-732-FL, 2014 WL 3895940, at \*\*2-3, *report and recommendation adopted*, 2014 WL 3895806 (E.D.N.C. Aug. 8, 2014) (citing *Wright v. Town of Zebulon*, 202 N.C. App. 540, 543, 688 S.E.2d 786, 789 (2010) and *Davis v. Matroo*, No. 5:13–CV–00233–BO, 2013 WL 5309662, at \*2 (E.D.N.C. Sept.

---

[1] As also discussed by Plaintiff, his official-capacity claims against Officers Ellis and Helms are tantamount to bringing suit against the municipality itself – the Town of Winterville.[1] *See Moore v. City of Creedmoor*, 345 N.C. 356, 367, 481 S.E.2d. 14, 21 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Defendants have not moved to dismiss these claims.

19, 2013)) (dismissing Raleigh Police Department as an entity not capable of being sued pursuant to Rule 12(b)(6)). Thus, North Carolina law deems that "Winterville Police Department" is not an <u>entity</u> capable of being sued, Whether pursuant to Rule 12(b)(2) or Rule 12(b)(6), Plaintiff cannot bring claims against "Winterville Police Department"; and, as such, Defendant "Winterville Police Department" should be dismissed from this action.

## II.    Plaintiff cannot establish a First Amendment retaliation claim.

Plaintiff's counsel appears to concede that they are not intending to bring a claim under the Fourth Amendment for any use of force by Officer Helms, and instead intend to assert a claim under the First Amendment. (DE 19 p. 6-7). As such, any claims based on force used by Officer Helms should be dismissed. Further, while Plaintiff characterizes his claim as arising under the First Amendment, the facts alleged by Plaintiff do not support a First Amendment claim, and Officer Helms would be entitled to qualified immunity for that claim as well.

### A. Plaintiff has not pled sufficient facts to establish a First Amendment retaliation claim.

Plaintiff must establish three elements in order to prove a First Amendment § 1983 retaliation claim. First, the plaintiff must demonstrate that his or her speech was protected. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685–86 (4th Cir. 2000) (*citing Huang v. Board of Governors,* 902 F.2d 1134, 1140 (4th Cir.1990). Second, the plaintiff must demonstrate that the defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech. *Id.* (*citing ACLU v. Wicomico County, Md.,* 999 F.2d 780, 785 (4th Cir.1993) (stating that "a showing of adversity is

essential to any retaliation claim"). Third, the plaintiff must demonstrate that a causal relationship exists between its speech and the defendant's retaliatory action. *Id.* (*citing Huang,* 902 F.2d at 1140).

Plaintiff cannot establish that his speech was protected, as there is no controlling authority finding a First Amendment protected right to live stream a traffic stop. Plaintiff's argument as to their First Amendment claim cites several cases broadly recognizing that content-based restrictions are generally prohibited. However, none of these cases involve the right to live-stream a law enforcement encounter. A restriction against live-streaming a law enforcement would not constitute a content-based restriction, subject to strict scrutiny, but rather a time, place, and manner restriction, subject to rational basis scrutiny. It is well established that "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 790-91 (1989) (upholding municipal noise regulation as "content-neutral" time, place or manner regulation under First Amendment). As set forth in Defendant's prior brief, a reasonable officer in Officer Helms' position could conclude that the concern for officer safety outweighs the de minimis restriction of not being permitted to live-broadcast the location and activities of the police officers during a traffic stop. Further, a reasonable officer could have believed that a brief

seizure of Plaintiff's cell phone when he refused to cease broadcasting the traffic stop in real time was a reasonable measure to protect officer safety, akin to ordering occupants out of a vehicle for the duration of the traffic stop or to ordering an individual to end a phone call. As such, the decision to not allow live-streaming of a traffic stop for officer safety reasons is a time, place, manner restriction that survives rational basis review.

Further, Plaintiff cannot establish any retaliatory action which adversely affected the plaintiff's constitutionally protected speech, a showing which is "essential to any retaliation claim." *ACLU v. Wicomico County, Md.,* 999 F.2d at 785. The video recording makes clear that Officer Helms abandoned his efforts to prevent Plaintiff from live-streaming, and Plaintiff was allowed to continue live-streaming for the duration of the encounter. Although Officer Helms (legitimately, as set forth in Defendants' prior brief) briefly attempted to prevent Plaintiff from live-streaming, Plaintiff was not actually prevented from live-streaming at any point. As such, Plaintiff cannot establish that his alleged constitutionally protected speech was adversely affected.

As Plaintiff cannot establish that he had a First Amendment right to live-stream the encounter, and cannot show that he was actually prevented from live-streaming, he cannot establish a claim of First Amendment retaliation.

**B. Officer Helms is entitled to qualified immunity for any First Amendment retaliation claim.**

As Plaintiff concedes in his brief, the only time the Fourth Circuit has weighed in on the issue of the right to record police, it held that the right to record was not

clearly established. (DE 19, p. 5) (*citing Szymecki v. Houck*, 353 Fed. Appx. 852 (4th Cir. 2009) (per curiam) (unpublished)). For this reason alone, Officer Helms is entitled to qualified immunity as to any claim that he violated Plaintiff's constitutional right to live-stream. *See e.g. Wilson v. Layne,* 141 F.3d 111, 114 (4th Cir.1998) (en banc) (holding that the law cannot be clearly established in the Fourth Circuit by cases in other circuits).

Further, even the out of circuit cases cited by Plaintiff are inapposite. There is a significant distinction between recording a law enforcement encounter and posting it online after the fact (which Plaintiff was informed was permissible) and live-streaming in real time, which poses legitimate concerns for officer safety. None of the cases relied on by Plaintiff involve live-streaming. The U.S. Supreme Court has held numerous times in recent years that "clearly established law" should not be defined "at a high level of generality." *See e.g., White v. Pauly*, 137 S. Ct. 548, 552 (2017); *Kisela v. Hughes*, 138 S. Ct. 1148 (2018); *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019). Although "this Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152, 200 L. Ed. 2d 449 (2018) (*citing White,* 580 U.S., at ——, 137 S.Ct., at 551. "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id*. Plaintiff's attempts to rely on out of circuit cases on the right to record law enforcement to clearly establish the right to live-stream law enforcement encounters in the Fourth Circuit is unavailing.

Plaintiff's argument would require this court to ignore both Fourth Circuit precedent (stating that other jurisdictions cannot clearly establish laws in the Fourth Circuit) and the United States Supreme Court (by defining the right broadly as a right to "record" rather than the more specific right to "live-stream"). As set forth above, Officer Helms did not violate any clearly established rights of the Plaintiff, and is therefore entitled to qualified immunity to the claims brought against him in his individual capacity.

## CONCLUSION

For the reasons stated above, as well as the reasons previously set forth in Defendants' prior briefing, Defendants respectfully contend that their Partial Motion to Dismiss should be GRANTED.

This the 9th day of March, 2020.

/s/ Dan M. Hartzog Jr.
Dan M. Hartzog Jr.
N.C. State Bar No. 35330
Email: dhartzogjr@hartzoglawgroup.com
Katherine Barber-Jones
N.C. State Bar. No. 44197
Email: kbarber-jones@hartzoglawgroup.com
HARTZOG LAW GROUP LLP
1903 N. Harrison Avenue, Suite 200
Cary, North Carolina 27513
Telephone: (919) 670-0338
Facsimile: (919) 714-4635
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification to all registered CM/ECF participants.

This the 9th day of March, 2020.

/s/ *Dan M. Hartzog Jr.*
DAN M. HARTZOG, JR.
N.C. State Bar No. 35330
E-mail: dhartzogjr@hartzoglawgroup.com
KATHERINE BARBER-JONES
N.C. State Bar No. 44197
E-mail: kbarber-jones@hartzoglawgroup.com
1903 N. Harrison Avenue, Suite 200
Cary, North Carolina 27513
Telephone: (919) 670-0338
Facsimile: (919) 714-4635
*Attorneys for Defendants*