IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 4:19cv157

| | |
|---|---|
| DIJON SHARPE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM IN** |
| | ) **SUPPORT OF** |
| Officer WILLIAM BLAKE ELLIS, in his official capacity only, and Officer MYERS PARKER HELMS IV, in his official capacity only, | ) **DEFENDANTS' MOTION** |
| | ) **FOR PARTIAL JUDGMENT** |
| | ) **ON THE PLEADINGS** |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

COME NOW Defendants, Officer WILLIAM BLAKE ELLIS ("Officer Ellis"), in his official capacity only, and Officer MYERS PARKER HELMS IV, in his official capacity ("Officer Helms") (*collectively*, "Defendants"), by and through their undersigned attorneys and pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and submit this Memorandum in Support of Defendant's Motion for Partial Judgment on the Pleadings.

## STATEMENT OF THE CASE

On November 3, 2019, Plaintiff filed a complaint against the Winterville Police Department, Officer William Blake Ellis, in his official capacity, and Officer Myers Parker Helms, IV, both individually and in his official capacity. Plaintiff's complaint asserted the following causes of action: 1) Violation of 42

U.S.C. § 1983 – Declaratory Judgment (Official Capacity & *Monell* Claims against Defendant Police Department), 2) Violation of 42 U.S.C. § 1983 (Individual Capacity Claim Against Officer Helms) [DE 1]. On February 3, 2020, Defendants timely filed an Answer [DE 14] and Partial Motion to Dismiss [DE 15], seeking to dismiss the individual capacity claims against Officer Helms for failure to state a claim. On August 14, 2020, this Court heard argument on Defendants' Motion [DE 31], and, on August 20, 2020, an Order [DE 33] was entered dismissing Plaintiff's claims against Officer Helms in his individual capacity and the "Winterville Police Department." Order, DE 33 at 16. Only Plaintiff's official capacity claims against Officers Helms and Ellis remain. *Id.* Through this motion, Defendants now seek dismissal of Plaintiff's remaining official capacity and *Monell* claims pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

### STATEMENT OF RELEVANT FACTS

Plaintiff contends that he became a civic activist who promotes greater accountability for law enforcement following a 2017 traffic stop by a different police department in which he contends he was tased, choked, and beaten by the responding officers. Compl., DE 1 ¶¶ 15-18, . On October 9, 2018, Plaintiff was a passenger in a vehicle that was pulled over by Officer Ellis and Officer Helms of the Town of Winterville Police Department. *Id.* ¶¶ 19-20. While waiting for the officers to approach, the driver called someone on his mobile

2

Case 4:19-cv-00157-D     Document 37     Filed 11/18/20     Page 2 of 14

phone, so that the person was aware he had been pulled over by the police. *Id.* ¶ 21.

At the same time, while waiting for officers to approach, Plaintiff turned on the video recording function of his smartphone and began livestreaming – broadcasting in real time – via Facebook Live to his Facebook account. *Id.* ¶ 22. During the interaction, Plaintiff refused to provide his name when asked. *Id.* ¶ 24. The officers returned to the car to run the driver's license and issue a citation. *Id.* ¶ 25. Upon returning to the vehicle, Officer Helms confirmed that Plaintiff was live broadcasting over Facebook Live, and then he reached into the vehicle to grab Plaintiff's phone. *Id.* ¶ 28; Recording at 11:40. The video shows Officer Helms explaining, "we ain't gonna do Facebook Live, because that's an officer safety issue." *Id.* ¶¶ 28-29. Officer Ellis, who was at the driver's side, likewise stated that they could not allow Facebook Live due to concerns that it lets anyone watching know where the traffic stop is being conducted. He stated that recording was not a problem, but livestreaming was not allowed, and that Plaintiff would be arrested if he tried to livestream in the future. *Id.* ¶ 31.

Plaintiff alleges, "upon information and belief, based on Officer Ellis's representations to Mr. Sharpe, the Defendant Police Department has an unconstitutional policy, custom, or practice of preventing citizens from recording and livestreaming their interactions with police officers in the public

3

performance of their duties." Compl., DE 1 ¶ 41. Plaintiff does not make any further allegations regarding a policy, custom or practice of the Town of Winterville (*hereinafter*, the "Town"). *See generally* Compl. Further, Plaintiff does not allege that Officer Helms or Officer Ellis possesses final policy-making authority or that any Town official with policymaking authority has made representations that a policy, custom or practice of preventing citizens from livestreaming interactions with the Town's police officers exists. *Id.*

## ARGUMENT

Judgment as a matter of law should be granted to Defendants on Plaintiff's remaining claims against the official capacity Defendants, because Plaintiff has not plausibly alleged Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) is determined under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

In resolving a motion for judgment on the pleadings, the court must accept all of the non-movant's factual allegations as true and draw all reasonable inferences in its favor. *Bradley v. Ramsey*, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004). Judgment on the pleadings is appropriate if, taking all of the non-moving party's factual allegations as true, the movant demonstrates that

4

Case 4:19-cv-00157-D   Document 37   Filed 11/18/20   Page 4 of 14

there is no genuine issue of material fact and that movant is entitled to judgment as a matter of law. *Id.*

While the court must accept all well-pleaded factual allegations as true and must construe the facts in the light most favorable to the plaintiff, a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555). Moreover, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" or "allegations that contradict matters properly subject to judicial notice or by exhibit." *Jefferson v. Sch. Bd. of City of Norfolk*, 452 F. App'x 356, 357 (4th Cir. 2011) (*citing Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002)).

**I. JUDGMENT SHOULD BE ENTERED FOR DEFENDANTS BECAUSE PLAINTIFF HAS FAILED TO ALLEGE A POLICY, CUSTOM, OR PRACTICE OF THE TOWN SUFFICIENT TO ESTABLISH *MONELL* LIABILITY.**

Plaintiff's remaining claims against Defendants should be dismissed because Plaintiff does not allege sufficient facts to state a plausible claim that the Town of Winterville has a policy, custom, or practice of preventing citizens from livestreaming their interactions with police officers. To prevail on a § 1983 claim, the Plaintiff must show that (1) he was deprived of a federal statutory or constitutional right; and (2) the deprivation was committed under color of

state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). However, not every deprivation of a constitutional right will lead to municipal liability. In order to establish a municipal § 1983 claim, plaintiff must assert and establish that the alleged constitutional violation resulted from an official policy or custom, or deliberate indifference by the municipality and its officials in the training and supervision of its employees. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 691 (1978). Plaintiff must assert and ultimately prove that the alleged unconstitutional conduct complained of was caused by an unconstitutional official policy or custom. *Id.* In *Spell v. McDaniel*, 824 F.2d 1380, 1385-1386 (4th Cir. 1987), the Fourth Circuit stated that liability exists only when the municipality and its officials take action under an official policy which violates another individual's constitutional rights. In *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999), the Fourth Circuit clarified that the "[t]he challenged policy or custom cannot merely be the abstract one of violating citizens' constitutional rights." *Id.* Instead, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.*

Plaintiff's remaining claims against the official capacity Defendants are considered to be claims against the municipality, the Town of Winterville, and thus must meet the standard of *Monell* to impose liability. *See e.g., Kentucky*

*v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) ("in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law).

A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). The US Supreme Court has recognized that acts of individual employees are insufficient to establish liability under *Monell*:

> In assigning municipal liability under *Monell,* we accordingly distinguish an act of a municipal agent without independent authority to establish policy from the act of one authorized to set policy under local law, and we likewise distinguish the acts of lower level employees depending on whether they do or do not implement or manifest a policy set by those with the authority to set it. The act of the municipality is the act only of an authorized policymaker or of an employee following the policymaker's lead. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 417 (1997) (citing *Pembaur v. Cincinnati,* 475 U.S. 469, 480 (1986).

Here, Plaintiff fails to allege any specific policy statement, ordinance, regulation, or decision made by a person with final policymaking authority, making only a conclusory allegation that the "Police Department has an unconstitutional policy, custom, or practice of preventing citizens from livestreaming their interactions with police officers." Compl. ¶ 41. "Numerous courts in the Fourth Circuit have held that 'boilerplate allegations' and 'generalized' claims without 'details about [the] policies and practices and how they are inadequate, inaccurate, or ineffective' are insufficient as a matter of law 'to establish a custom or practice' claim under *Monell*. *I.P. by Newsome v. Pierce*, No. 5:19-CV-228-M, 2020 WL 1231809, at *6 (E.D.N.C. Mar. 9, 2020) (*citing Lyles v. Prawdzik*, No. PWG-15-1056, 2016 WL 3418847, at *5 (D. Md. June 22, 2016); *see also Barrett v. Board of Educ. of Johnston Cty.*, 13 F. Supp. 3d 502, 511 (E.D.N.C. Apr. 9, 2014) (dismissing § 1983 claim and stating: "This is nothing more than a formulaic recitation of the legal standard for finding municipal liability under § 1983 .... no non-conclusory factual allegations.... plaintiffs point to no particular policy at all.").

In attempting to establish a policy, Plaintiff relies on a single statement from Officer Ellis, an individual employee. Plaintiff did not allege that Office Ellis or Officer Helms was an official with final policymaking authority. *Id.* Nor could Plaintiff have plausibly made such an allegation. Under North Carolina law, police officers, who are public officials, do not possess final

8

policymaking authority. *See, e.g., Glenn-Robinson v. Acker*, 140 N.C. App. 606, 631, 538 S.E.2d 601, 618-19 (2000); *Rogerson v. Fitzpatrick*, 121 N.C. App. 728, 732-33, 468 S.E.2d 447, 450-52 (1996). Neither Officer Ellis nor Officer Helms is a final policymaker with the Town of Winterville, and Plaintiff cannot rely solely on the facts underlying his own incident in order to establish a claim pursuant to *Monell*.

Plaintiff cannot base his *Monell* claim against the official capacity Defendants on the single incident described in the Complaint. It is well settled that "isolated incidents" of unconstitutional conduct by subordinate employees are insufficient to establish a custom or practice for § 1983 purposes. *Carter*, 164 F.3d at 220. *See also, Davis v. Town of Smithfield*, No. 5:12-CV-00360, 2012 U.S. Dist. LEXIS 161917, 2012 WL 5493615, at *5 (E.D.N.C. Nov. 13, 2012) (holding that a single incident would be insufficient to establish a policy or custom and thus insufficient to sustain a claim under § 1983); *Lanier Const. Co., Inc. v. City of Clinton, NC.*, 924 F. Supp. 2d 659, 667 (E.D.N.C. 2013) (dismissing § 1983 claim when the matter was almost entirely limited to the exchange between the two parties on a single disputed event); *Caviness v. Durham Public Schools Bd. of Educ.*, No. 1:95CV00878, .1996 U.S. Dist. LEXIS 19973, 1996 WL 33657236, at *5 (M.D.N.C. Dec. 16, 1996) ("A single act of the type here alleged cannot suffice, standing alone, to establish the existence of such a policy.") (*citing Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 875 (4th

Cir. 1989)). Rather, there must be numerous instances that are representative of a "persistent and widespread practice to constitute a custom or usage with the force of law." *Id.* at 218. *See Grim v. Baltimore Police Dep't*, No. ELH-18-3864, 2019 U.S. Dist. LEXIS 194461, 2019 WL 5865561, at *21 (D. Md. Nov. 8, 2019) (citing, inter alia, that defendants "received 'more than 60 complaints'").

Here, Plaintiff has alleged no facts, other than his own incident in October 2018, relating to the alleged policy, custom, or practice of preventing citizens from livestreaming their interactions with police officers. Plaintiff points to no specific policy, and does not allege any other instances in which the police prevented a citizen from livestreaming, nor even received a single other complaint. Thus, Plaintiff's claim fails to state a claim under the *Iqbal/Twombly* standard because he has failed to allege sufficient facts to state a claim that is plausible on its face.

## II. JUDGMENT SHOULD BE ENTERED FOR DEFENDANTS BECAUSE THE POLICY ALLEGED BY PLAINTIFF, IF IT EXISTED, WOULD NOT BE UNCONSTITUTIONAL.

Alternatively, Plaintiff's *Monell* claim should be dismissed because, assuming *arguendo* that the Police Department does have a policy, custom, or practice of preventing citizens from livestreaming their interactions with police, this policy is not unconstitutional. Although the majority of Circuits recognize a broad right to record police, none of these cases involve the right to live-stream a law enforcement encounter. *See, e.g.*, *Gericke v. Begin*, 753 F.3d

1 (1st Cir. 2014); *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017); *Turner v. Driver*, 848 F.3d 678, 683 (5th Cir. 2017); *ACLU v. Alvarez*, 679 F.3d 583, 586 (7th Cir. 2012); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000). There is a significant distinction between recording a law enforcement encounter and posting it online after the fact (which Plaintiff was informed was permissible) and live-streaming in real time, which poses legitimate concerns for officer safety. Furthermore, the only time the Fourth Circuit has weighed in on the issue of the right to record police, it held that the right to record was not clearly established. *Szymecki v. Houck*, 353 Fed. Appx. 852 (4th Cir. 2009) (per curiam) (unpublished). Nevertheless, even if the Fourth Circuit were to recognize a broad right to record police activity, this right may still be subject to reasonable time, place, and manner restrictions. *See, e.g., Gericke*, 753 F.3d at 9; *Fields*, 862 F.3d at 353, *Turner*, 848 F.3d at 690; *Alvarez*, 679 F.3d at 605; *Smith*, 212 F.3d at 1333.

It is well established that "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S.

11
Case 4:19-cv-00157-D   Document 37   Filed 11/18/20   Page 11 of 14

781, 790-91 (1989) (upholding municipal noise regulation as "content-neutral" time, place or manner regulation under First Amendment). In determining whether a policy is content-neutral, the government's purpose in adopting the regulation controls. If a regulation

> …serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is '*justified* without reference to the content of the regulated speech.'

*Id.* at 791 (citations omitted). A policy prohibiting live-streaming of police activity is content-neutral because it is justified by concerns for officer safety related to broadcasting the real-time location of law enforcement activity, which applies regardless of the content of the video.

The purported policy would also serve a compelling government interest. The Supreme Court has recognized that police officers face dangers during traffic stops. *See Rodriguez v. United States*, 575 U.S. 348, 356–57 (2015). Live-broadcasting the location and activities of police officers during a traffic stop or other law enforcement activity (such as service of a warrant, drug raids, etc.) could potentially expose the officer to a host of unknown dangers.

This restriction also leaves open "ample alternative channels for communication of the information," because it does not restrict a citizen's right to record, but only restricts the timing for when they can post the video to social media or otherwise distribute the footage. As such, the decision to not allow

12

Case 4:19-cv-00157-D   Document 37   Filed 11/18/20   Page 12 of 14

livestreaming of a traffic stop for officer safety reasons is a time, place, and manner restriction that did not violate Plaintiff's First Amendment rights.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court grant the motion for partial judgment on the pleadings and dismiss with prejudice Plaintiff's remaining claims against the against the officers in their official capacities.

Respectfully submitted, this the 18th day of November, 2020.

*/s/ Dan Hartzog Jr.*
Dan M. Hartzog, Jr.
N.C. State Bar No. 35330
Katherine Barber-Jones
N.C. State Bar No. 44197
HARTZOG LAW GROUP LLP
1903 N. Harrison Avenue, Suite 200
Cary, NC 27513
Email: dhartzogjr@hartzoglawgroup.com
    kbarber-jones@hartzoglawgroup.com
Telephone/Fax: (919) 480-2450
*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification to all registered CM/ECF participants.

This the 18th day of November, 2020.

/s/ *Dan Hartzog Jr.*
DAN M. HARTZOG, JR.
N.C. State Bar No. 35330
E-mail: dhartzogjr@hartzoglawgroup.com
KATHERINE BARBER-JONES
N.C. State Bar No. 44197
E-mail: kbarber-jones@hartzoglawgroup.com
1903 N. Harrison Avenue, Suite 200
Cary, North Carolina 27513
Telephone: (919) 670-0338
Facsimile: (919) 714-4635
*Attorneys for Defendants*